UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| MARY JO LYON, | ) | CIV. 09-5070-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING |
| vs. | ) | PLAINTIFF'S MOTION TO |
| | ) | COMPEL DISCOVERY |
| BANKERS LIFE AND CASUALTY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the court is plaintiff's first motion to compel.  (Docket 33).  Plaintiff's motion seeks an order requiring defendant to comply with the initial disclosure requirements of Fed. R. Civ. P. 26 and to provide responsive answers to plaintiff's first request for production of documents to defendant.  Id.  Plaintiff has complied with Fed. R. Civ. P. 37(a)(1) and D.S.D. Civ. LR 37.1 by attempting, in good faith, to resolve her differences with defendant before bringing the motion to compel before the court.  Id.

## FACTUAL BACKGROUND

Plaintiff's complaint (Docket 1-6) and amended complaint (Docket 1-3) were originally filed in the Seventh Judicial Circuit Court for Pennington County, South Dakota.  The director of the South Dakota Division of Insurance admitted service of the summons and complaint on August 10, 2009.  (Docket 1-2).  Defendant filed a notice of removal (Docket 1) on August 28, 2009, on the basis of diversity of citizenship and this court's jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441.  On September 4,

2009, defendant filed its answer to plaintiff's amended complaint.  (Docket 6).  In its answer, defendant asserted 54 affirmative defenses and a number of other defenses to plaintiff's amended complaint.  Id.

On October 8, 2009, the parties filed their report of Rule 26(f) meeting. (Docket 16).  In that report, defendant agreed that "all prediscovery disclosures required by Rule 26(a)(1) will be completed . . . [by] October 15, 2009."  Id. at #10.  The court's scheduling order incorporated that same Rule 26(a)(1) exchange of information requirement.  (Docket 17 #2).

On October 22, 2009, defendant served its initial disclosures.  (Docket 22-2).  In that initial disclosure, defendant made the following representation:

> A.   The following are the names, addresses and telephone numbers of each person Bankers Life believes has discoverable, non-privileged, personal knowledge concerning significant factual issues specifically raised by the pleadings . . . .
>
> 1.   Plaintiff.
>
> 2.   Corporate representative(s) of Bankers Life
> c/o Paul P. Bolus, Esq.
> Bradley Arant Boult Cummings LLP
> 1819 Fifth Avenue North
> Birmingham, Alabama 35203-2119
> (205) 521-8000

Id. at A.  Defendant made no specific reference to documents as contemplated by Rule 26(a)(1)(A)(ii), but stated:

> The documents . . . described in Rule 26 . . . that are in defendant's possession, custody, or control . . . will be made available for inspection and copying at the offices of Bradley Arant

> Boult Cummings LLP at a time mutually agreeable to counsel.  In the alternative, if requested by counsel for plaintiff, counsel for defendant will copy and mail all such documents at plaintiff's expense.

Id. at B.

On October 30, 2009, in response to defendant's initial discovery, plaintiff wrote to defendant's counsel.  That response contained the following inquiries:

> I received your Rule 26 initial disclosures.  I would appreciate it if you could give me the information required by the Rule with respect to persons who might have discoverable information.  Also, local practice is to provide copies of the documents identified under Rule 26 to the opposing party.  You will notice that I have already provided copies of our documents to you.  I would sure appreciate it if you could return the favor . . . .

(Docket 34-4).

In response, on November 3, 2009, defendant's counsel wrote:

> It is our position that our initial disclosures are compliant in all respects under the Federal Rules.  Nevertheless, pursuant to your request, we will supplement our initial disclosures, providing you with the documents identified under Rule 26 and the specific names of individuals who have knowledge of this matter.  Please be advised, however, that the subject policy has been in force since 1997 and, therefore, there are a substantial amount of documents in this case.  It will take us a little time to gather the requested information and documentation . . . .

(Docket 34-5).

On December 21, 2009, defendant served its responses to plaintiff's first set of requests for production of documents.  (Docket 34-7).  In its

17-page response, defendant responds to 22 of 28 plaintiff's requests as

follows:

> Defendant objects to this request on the grounds that it is vague,
> ambiguous, overly broad, unduly burdensome, harassing, not
> properly limited in time and/or scope, and not reasonably
> calculated to lead to the discovery of admissible evidence.
> Defendant objects to this request to the extent it seeks
> confidential, financial, business or proprietary information.

(Docket 34-7) (hereinafter this objection will be referred to as "overly broad"

and "proprietary").  For ten of the requests, defendant responded:

> Without waiving these objections and specifically incorporating
> them herein, Defendant states as follows:
>
> > Upon the entry of an appropriate protective order,
> > responsive non-privileged documents will be made
> > available for inspection and copying at Bradley Arant
> > Boult Cummings LLP at a mutually agreeable date and
> > time.  Alternatively, upon the entry of an appropriate
> > protective order, at the request and expense of Plaintiff's
> > counsel, counsel for Defendant will copy the requested
> > documents and mail them to Plaintiff's counsel.

Id. (hereinafter this response will be referred to as "subject to protective

order").  For three of the requests defendant stated:

> Defendant further objects to this request on the grounds that it
> requests information regarding other policies and policyholders
> which are not at issue in the instant case.

Id. (hereinafter this response will be referred to as "other policyholders").

For five of the requests defendant stated:

> Defendant objects to this request on the grounds that it seeks
> information protected by the attorney-client and/or work product
> privilege.

4

Id. (hereinafter referred to jointly as "attorney-client/work product privilege").  For three of the requests defendant stated:

> Defendant objects to this request on the grounds that the requested topic seeks information in the public record which is equally available to Plaintiff.

Id. (hereinafter referred to as "public records").  For some of its responses defendant included two or more of these statements.  No documents were produced by defendant.

During a correspondence exchange on December 24, 2009, plaintiff's counsel inquired about defendant's responses to the requests for production of documents and the status of defendant's Rule 26 disclosures.  That inquiry included, among other things, the following:

> 1. You object to every request as seeking irrelevant information.  I provided you with six different discovery orders entered by South Dakota federal courts in bad faith actions, approving these same discovery requests.  Can you please direct me to binding authority that supports your position?
>
> 2. You object to producing Mary Lyon's claim file, but say you will make some documents available if plaintiff agrees to a confidentiality order.  Please explain how Bankers Life will suffer "competitive disadvantage" by disclosing documents showing why Bankers Life refused to pay this 85 year old women's claim for assisted living benefits.
> . . . .
> 6. You still have not complied with the Rule 26 disclosure requirements.  Will you please do so?
> . . . .

(Docket 34-16).  On January 8, 2010, defense counsel responded to plaintiff's counsel and stated, among other things:

> . . . .
> First, it is Bankers Life's position that many of your document requests are objectionable on various grounds, including, but not limited to, on the grounds that some requests are irrelevant to the claims and defenses in the above-referenced matter . . . . Many of your requests are overly broad as well . . . .
>
> Secondly, Bankers Life will produce the claims file.  In fact, I will provide such documentation to you in the very near future
> . . . .
> Lastly, Bankers Life intends to supplement its initial disclosures in this case.  I will get you supplemental disclosures, with corresponding documentation, in the very near future . . . .

(Docket 34-6).  Defendant again reasserted its request that a confidentiality agreement be in place before any documents were produced, insisting that plaintiff withdraw her objections to defendant's proposed order or another proposal which may be sent in the future.  Id.

On January 29, 2010, plaintiff filed her first motion to extend scheduling deadlines.  (Docket 22).  Among the reasons for this motion was plaintiff's inability to obtain an expert review of defendant's claim file of plaintiff because of defendant's failure to comply with the Rule 26(a)(1) disclosure requirement, including the disclosure of the claims file. Id.  That same day, defendant filed a response to plaintiff's motion to extend scheduling deadlines and motion for protective order.  (Docket 23). Defendant did not resist plaintiff's motion for extension.  Id. at p. 6.

Rather, defendant felt it was necessary to inform the court as to defendant's perception of the status of the case.  Id.

> As a preliminary matter, in her motion Plaintiff fails to mention that Bankers Life has already agreed to supplement its Rule 26 initial disclosures and had so informed Plaintiff's counsel on January 8, 2010 that it would do so in the near future. . . . One of the reasons Bankers Life had not yet supplemented its disclosures is because it was trying to get an agreement with Plaintiff's counsel on a protective order. . . . Plaintiff's counsel has rejected Bankers Life's proposed confidentiality order.

Id. at p. 2.  As part of its response, defendant then incorporated its motion for protective order.  (Docket 23).

On February 5, 2010, based on the plaintiff's motion and defendant's concurrence, the court entered an order granting extension.  (Docket 24). While this order made no further mention of the Rule 26(a)(1) obligations, it reset the plaintiff's deadline for the identity of retained experts and their reports for May 3, 2010, as well as other deadlines.  Id.

Plaintiff filed her motion to compel (Docket 33) on March 23, 2010, asserting as the basis of that motion (a) the failure of defendant to comply with the Rule 26(a)(1) disclosure requirements; and (b) defendant's objections and failure to adequately respond to plaintiff's first request for production of documents.  (Docket 34).  Plaintiff also requested an award of attorney's fees and costs in bringing the motion on before the court.  Id. at p. 27.

The very next day, March 24, 2010, defendant served plaintiff by mail with defendant's supplemental initial disclosures.  (Docket 35-1).  Those

supplemental initial disclosures replicated its original initial disclosures, except for the underlined portion emphasized as follows:

> A.  The following are the names, addresses and telephone numbers of each person Bankers Life believes has discoverable, non-privileged, personal knowledge concerning significant factual  issues specifically raised by the pleadings . . . .
>
>> 1.      Plaintiff.
>>
>> 2.      Corporate representative(s) of Bankers Life, <u>including, but not limited to, Elizabeth Kinder, Jennifer Hutton, Bonnie Doebler, and Chris Reuscher</u>.
>> c/o Paul P. Bolus, Esq.
>> Bradley Arant Boult Cummings LLP
>> 1819 Fifth Avenue North
>> Birmingham, Alabama 35203-2119
>> (205) 521-8000

<u>Id.</u> at A.  Defendant further represented that the "documents and information described in Rule 26 . . . are enclosed herewith."  <u>Id.</u> at B.  The disclosure makes no reference to the particular documents or information which were then provided to plaintiff.

## DISCUSSION

## A.     DEFENDANT'S RULE 26(A)(1) DISCLOSURES

Fed. R. Civ. P. 26(a)(1) directs the initial disclosure of information and documents in civil litigation.  That section provides:

> (a)  Required Disclosures.
>
>> (1)     Initial Disclosure.
>>
>>> (A) In General. . . . a party must, without awaiting a discovery request, provide to the other parties:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Id.

Based on the supplemental disclosure (Docket 35-1), defendant asserts this portion of plaintiff's motion to compel discovery is moot. (Docket 35, p. 1).  Defendant cites to no precedent which allows a party to

not comply with the required disclosures of Rule 26(a)(1).  Rule 26(a) was
intended to increase the "exchange of basic information . . . and eliminate
the paper work involved in requesting such information."  Advisory
committee's note, 1993 amendment.  "Litigants should not indulge in
gamesmanship with respect to the disclosure obligations."  Id.

In 2000, the Rule 26(a)(1) provisions were "amended to establish a
nationally uniform practice . . . . the rule exempts specified categories of
proceedings from initial disclosure, and permits a party who contends that
disclosure is not appropriate in the circumstances of the case to present its
objections to the court, which must then determine whether disclosures
should be made."  Advisory committee's note, 2000 amendment.  "These
amendments restore national uniformity to disclosure practice.  Uniformity
is also restored to other aspects of discovery by deleting most of the
provisions authorizing local rules that vary the number of permitted
discovery events or the length of depositions."  Id.  The annotations further
provide:  "The disclosure obligation applies to 'claims and defenses,' and
therefore requires a party to disclose information it may use to support its
denial or rebuttal of the allegations, claim, or defense of another party."  Id.

"Case-specific orders remain proper, however, and are expressly
required if a party objects that initial disclosure is not appropriate in the
circumstances of the action."  Id.  Initial disclosures must be made unless a
resisting party notes its objection during the Rule 26(f) conference and notes

that objection in the report to the court.  Rule 26(a)(1)(C).  The court would then rule on any such objection.  Id.

"[Rule] 26 requires that each party automatically disclose 'the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses,' " Fausto v. Credigy Services Corp., 251 F.R.D. 427, 429 (N.D. Cal. 2008).  The court must determine whether a "party's failure to include a witness in the initial Rule 26(a)(1) disclosures was substantially justified or harmless."  Davis v. U.S. Bancorp, 383 F.3d 761, 765 (8th Cir. 2004) (referencing Rule 37(c)(1); Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998)).

Rule 26(a)(1)(A)(i) specifically requires a party to disclose the name, address and telephone number "of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses . . . ."  It is not a good faith response to the obligation of a party under Rule 26(A)(1)(A)(i) to simply identify those "individuals" as corporate representatives, with no reference to the subject areas of their testimony, and then to identify their generic address as the address of defense counsel.  To endorse such an approval would defeat the automatic disclosure intent of the Rule and impair the ability of the other party to prepare appropriate interrogatories to develop testimony of those potential witnesses.

11

Similarly, Rule 26(a)(1)(A)(ii) is clear that a party's obligation, in its initial disclosures, is not to necessarily produce the documents of the case. Rather, the universal intent of subsection (ii) is to require a disclosing party to provide "a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ." Id. Such a log or listing of documents does not warrant a protective order under Rule 26(e) in this case.  A defendant may not refuse to produce such a log without a protective order.

Yet, defendant chose to ignore the clear mandates of the Rule and refused to make adequate and appropriate initial disclosures for nearly five months.  Even then, defendant's supplemental initial disclosures are inadequate under Rule 26(a)(1)(i) and (ii).  Consequently, under the court's general authority to supervise and control discovery, defendant's original and supplemental initial disclosures are stricken and defendant is required within a reasonable period of time to file its initial disclosures in conformity and compliance with Rule 26(a)(1).

**B.    PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

"Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).  "While the standard of relevance in the context of

12

discovery is broader than in the context of admissibility (Rule 26(b)) clearly states that inadmissibility is no grounds for objection to discovery. . . .” Id. (referencing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978)).  A party seeking discovery is merely required to make a threshold showing of relevance, which is more relaxed than the showing required for relevance in the context of admissibility.  Id. at 351.  The party resisting production of discovery bears the burden of establishing lack of relevancy or that complying with the request would be unduly burdensome.  See St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).  “[T]he mere statement . . . that [an] interrogatory [or request for production] was ‘overly broad, burdensome, oppressive or irrelevant’ is not adequate to voice a successful objection.”  Id. (internal citation omitted). “[T]he party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome, or oppressive.”  Id. at 512 (internal citation omitted).  “Because the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive is not in itself a reason for refusing to order discovery which is otherwise appropriate.”  In re Folding Carton Antitrust Litigation, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (internal citation omitted).  “[T]he fact that answering the interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis to object.”  Burns v. Imagine Films

13

Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996) (internal citation omitted).  Defendant has not met its "burden under [Rule 33(b)(4)] of making a specific showing of reasons why the interrogatories [and requests for documents] should not be answered or documents not produced where [it] merely made conclusory objections."  Id.

Plaintiff's requests for production of documents were served on November 19, 2009.  (Docket 34, p. 6).  Under Rule 26(c)(1), it is the defendant's duty to move for a protective order.  Rather than petition the court for a protective order, defendant filed boiler plate objections and simply refused to proceed, thus depriving plaintiff of meaningful discovery.  Furthermore, defendant failed to produce a privilege log identifying the particular documents to which a particular privilege was asserted.  Rule 26(b)(5)(A)(ii).  See Paine Webber Group, Inc. v. Zinsmeyer Trusts Partnership, 187 F.3d 988, 992 (8th Cir. 1999) ("most tribunals require the party asserting . . . [a]  privilege to provide the party seeking discovery with a list or log that describes the document without disclosing the allegedly privileged communications it contains.  This practice is now codified in . . . Rule 26(b)(5) . . . .").  See also Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert denied, 415 U.S. 977 (1974) (requiring parties who object to discovery on grounds of privilege to itemize and index the documents allegedly exempt from discovery so the court may determine whether any protection or privilege actually applies).

14

In plaintiff's motion to compel, it is reported that defendant has agreed to "produce relevant non-privileged documents" once this court has entered a protective order.  (Docket 34, p. 27).  A protective order (Docket 36) was entered by the court during the pendency of this motion.  Plaintiff requests the court to compel defendant to comply with "Requests 1, 4, 8, 9, 10, 11, 20, 24, 25 and 26" so there is no question of defendant's obligation to provide discovery.  (Docket 34, p. 27).  The court will enter such an order.

The court addresses each of the plaintiff's separate discovery requests and defendant's responses as follows:

**REQUEST NO. 1:  Any and all documents relating in any way to the claim(s) of Mary Jo Lyon, or benefits paid to Mary Jo Lyon, which would include but not be limited to . . . .**

Defendant's response was this request was overly broad, proprietary, and subject to a protective order.  (Docket 34-7).  Defendant had a statutory duty under Rule 26(a) to identify and produce plaintiff's claim file without a formal request, but because of defendant's failure to comply with Rule 26(a), plaintiff chose to make a formal request for her claim file.  Based on defendant's objections, it refused to produce the claim file of plaintiff. Interestingly, even though defendant required plaintiff to agree to a protective order to allow access to her claim file, defendant filed a portion of the claim file, not under seal, as part of its reply in support of a motion for protective order.  (Dockets 30-3, 30-4, and 30-5).

In order to prove an alleged bad faith denial of an insurance claim, plaintiff must prove that Bankers Life denied her claim knowing there was

15

no reasonable basis for the denial, or that the defendant acted with reckless disregard as to whether a reasonable basis existed for denial of the claim. McDowell v. Citicorp U.S.A., 734 N.W.2d 14, 19, 2007 S.D. 53, ¶ 15.  Even though defendant may have paid part of plaintiff's claim, the insurer may still be liable under a bad faith claim for unreasonably delaying payment of a claim if the insured suffered compensable loss as a result.  Id. at 19, 2007 S.D. ¶ 16.

The information plaintiff requested in discovery is all relevant to her assertion of bad faith.  The documents requested may show that Bankers Life initially denied plaintiff's claim with the knowledge that defendant had no reasonable basis for denying the claim, or denied the claim with reckless disregard to whether it had a reasonable basis for its actions.  There is no privilege or proprietary interest which could under any circumstance be applicable to plaintiff's own medical records and her claim file in the possession of defendant.  Request No. 1 is granted.

**REQUEST NO. 2:  Copies of any employment files of each person who handled, supervised, audited and/or reviewed Plaintiff's claim . . . .**

Defendant's response was this request was overly broad, proprietary, and asked for information relating to other policyholders.  (Docket 34-7)  In addition to its objections to this request, defendant asserts the present case is factually different from Beyer v. Medico Insurance Group, 266 F.R.D. 333 (D.S.D. 2009).  (Docket 35).  The difference Bankers Life asserts is that Medico Insurance Group was caught in its denial of a bonus plan for its employees.  Id.  "Whether or not any or every employee of Bankers Life

received a bonus is, quite simply, not relevant to this case." (Docket 35, p. 7).

What defendant fails to acknowledge is that in <u>Beyer</u> the court initially required disclosure of personnel files, as well as any bonus plans. <u>Beyer</u>, 266 F.R.D. at 335. Additionally, as plaintiff's counsel pointed out to defendant in the instant case, the district court in the Western Division of the District of South Dakota has traditionally and uniformly allowed discovery of personnel files in insurance bad faith cases. <u>See</u> <u>Torres v. Beverly Enterprises, Inc., et al</u>, CIV. 01-5056 (Docket 43) (D.S.D. 2002); <u>Swigart v. Progressive Classic Insurance Company</u>, CIV. 04-5059, 2005 WL 1378754 at *1 (D.S.D. April 29, 2005) ("6. The personnel files for each employee, manager, supervisor, or other agent of Progressive who was involved in plaintiff's claim . . . ."); <u>McElgunn v. Cuna Mutual Group, et al</u>, CIV. 06-5061 (Docket 84) (D.S.D. 2007) ("2. Plaintiff has asked for the personnel files of employees who handled her claim . . . . This request   . . . is granted subject to the following limitations: first, plaintiff must sign a protective order, and secondly, it is limited to the unredacted personnel files of [named employees] and the immediate supervisor of each person.").[1]

Plaintiff has already agreed to handle these personnel files in a confidential matter and not disclose any personal identifiers (protected under Fed. R. Civ. P. 5.2) beyond this litigation without prior court approval.

---

[1]Bankers Life's South Dakota counsel's law firm represented the insurance carriers in <u>Torres</u> and <u>McElgunn</u>.

(Docket 34, p. 9).  As one defense expert stated in <u>Torres</u>, "[i]f you give somebody a number, an objective they have to reach, and you tie it to their career, they are going to reach that number or they are going to manipulate that number so that it comes out the way they want it.  And believe me it's been done.  I have seen it done." <u>Torres</u>, CIV. 01-5056 (Docket 327, p. 43) (D.S.D. 2009).  These personnel files may reveal an inappropriate reason or reasons for defendant's action with respect to plaintiff's claim or an "improper corporate culture." <u>Id.</u>

Plaintiff's Request No. 2 is granted, subject to the requirement that no personal identifying information of Bankers Life's employees shall be disclosed outside of this litigation without prior approval of this court.

**REQUEST NO. 3:  Any and all quality assurance audits since January 1, 2001, relating to any of the personnel involved in handling, taking action, or reviewing Plaintiff's claim.**

Defendant's response was this request was overly broad, proprietary, and called for information relating to other policyholders.  (Docket 34-7). Plaintiff's request is based on her assertion that " '[q]uality assurance audits' are periodic spot-checks of claims files to access the quality of work done by claims handlers." (Docket 34, pp. 9-10).  "The auditors often give claims handlers feedback on how the company wants them to make claim decisions." <u>Id.</u> at p. 10.  Defendant's response to plaintiff's motion to compel discovery does not address this request for production.  (Docket 35).

Again, the district court has traditionally required disclosure of quality assurance audits in insurance bad faith cases.  <u>McElgunn</u>, CIV. 06-

18

5061 (Docket 84 #3) (D.S.D. 2007); <u>Beyer v. Medico Insurance Group</u>, No.
CIV. 08-5080, 2009 WL 736759 at *2 (D.S.D. March 17, 2009).  In <u>Beyer</u>,
the court held:

> The information Ms. Beyer requests . . . as to whether an internal
> audit was conducted, what the recommendation of the auditor
> was, and why Medico changed its decision and paid Ms. Beyer's
> claim are all relevant to Ms. Beyer's assertion of bad faith.  The
> documents requested may show that Medico denied Ms. Beyer's
> claim initially with the knowledge that it had no reasonable basis
> for denying the claim, or with reckless disregard to wether [sic] it
> had a reasonable basis for its actions.

<u>Id.</u>

Claims adjusters are frequently reminded that their job is to pay
"nothing more, nothing less" than a claim requires.  <u>In re Farmers
Insurance Exchange</u>, 481 F.3d 1119, 1125 (9th Cir. 2007).  Claims
adjusters may be "subject to quality assurance audits at any time . . . . The
primary goal of the audits is to determine 'lost economic opportunity,' a
subjective assessment of the difference between what was paid and what
could have been paid if the adjuster had correctly handled the claim."  <u>Id.</u>
"The audits ensure that adjusters are following FIE's 'best practices,' which
are any actions that can be implemented to prevent lost economic
opportunity."  <u>Id.</u>

Quality assurance audits could reasonably lead to the discovery of
admissible evidence regarding whether the investigation and/or evaluation
of plaintiff's claim was properly handled.   Plaintiff's request is limited to
auditors and reports associated with plaintiff's claim and should be neither

19

oppressive nor excessively burdensome for defendant to produce.  Request No. 3 is granted.

**REQUEST NO. 5: Any and all copies of documents that reference bonus programs applicable to any long term care claims department personnel from January 1, 2001 to present.**

Defendant's response was this request was overly broad and proprietary.  (Docket 34-7).  Bonus programs may provide some evidence of the motivation of claims personnel in evaluating a long-term care claim.  Qualifying for a monetary bonus, or other employee incentive, because of the manner in which defendant's employees respond to a claim, is certainly relevant to a bad faith claim.  See Pochat v. State Farm Mutual Automobile Insurance Company, No. Civ. 08-5015, 2008 WL 5192427 at *5 (D.S.D. Dec. 11, 2008) ("such information [regarding employee award and financial bonus programs is] . . . relevant to plaintiff's bad-faith insurance and breach of contract claims . . . .") (citing Saldi v. Paul Revere Life Insurance Company, 224 F.R.D. 169, 185 (E.D. Pa. 2004)).

Chief Judge Schreier also addressed the relevance of employee bonus plans as supporting an award of punitive damages in an insurance bad faith case.  The court wrote:

> The claims incentive bonus program rewarded certain employees who met targets or predetermined goals for claim payments . . . . The first objective listed in the plan is reducing previous year's claims payouts . . . . A large award [punitive damages], therefore, punishes defendants for their repeated misconduct . . . . [T]here is sufficient evidence from which the jury could conclude that defendants' incentive plans improperly motivated claims handlers and created an improper corporate culture that required an award of punitive damages . . . .

Torres, CIV. 01-5056 (Docket 327, pp. 29-31, 43) (D.S.D. 2009).

20

Plaintiff's Request No. 5 is reasonably limited in time and specific to

long-term care claims programs only.  Request No. 5 is granted.

**REQUEST NO. 6:  Any and all copies of documents referring to goals, targets, or objectives established for claim payments, or loss ratios, or combined ratios, applicable to long term care claims from January 1, 2001 to present.**

Defendant's response was this request was overly broad and

proprietary.  (Docket 34-7).  Claims ratios are inherently tied to bonus

programs.  For the same reasons stated above in Request No. 5, Request No.

6 is granted.

**REQUEST NO. 7:  Any and all documents in use since January 1, 2001 which inform Defendant's long term care claim personnel of the manner in which they can expect to get increases in salary, bonuses, or commissions.**

Defendant's response was this request was overly broad and

proprietary.  (Docket 34-7).  This request is reasonably limited in time and

tied to Requests Nos. 5 and 6.  For the same reasons, Request No. 7 is

granted.

**REQUEST NO. 12:  All e-mails, claim notes, letters, memos, articles, or any other documents on data contained on Defendant's computer system which contain any of the following terms:**

**a.  activities of daily living;**
**b.  ADL's or ADLs;**
**c.  cognitive;**
**d.  medically necessary;**
**e.  medical necessity;**
**f.  functionally incapacitated;**
**g.  functional incapacity;**
**h.  chronically ill.**

21

**The scope of this Request is from whatever date Defendant's software systems will allow search and identification of responsive documents or data, to present.**

Defendant's response was this request was overly broad, proprietary, and subject to the attorney-client/work product privilege.  (Docket 34-7). Plaintiff counters that documents from defendant's "computer system containing these terms will show how Bankers uses the terms, how it applies the eligibility requirements, and how it deals with claims made under these requirements."  (Docket 34, p. 14).

The court agrees with plaintiff that this request is self-limiting because it is premised on the data from which defendant's computer software system will allow or conduct a search based on reference to these words and the corresponding documents containing these words.  There is no justification to limit this software search to only policies or claims from within the state of South Dakota.  How Bankers Life handles similar long-term care policies in other jurisdictions is relevant to plaintiff's claim of bad faith in defendant's handling the claim of this particular plaintiff. Documents produced through defendant's software programing will illustrate how the defendant applies policy eligibility requirements and how it processes those claims, regardless of the state of residence of each policyholder.  The use of specific words or key phrases in electronic searches of computerized claim files has been approved historically in this district.  See McElgunn, CIV. 06-5061 (Docket 84, pp. 2-3) (D.S.D. 2007); Brown Bear v. CUNA Mutual Group, 266 F.R.D. 310, 323 (D.S.D. 2009)

22

("the documents requested . . . are relevant to . . . allegations that her claim was wrongfully denied based on interpretation of the time filing provision.").

The defendant can conduct a keyword or phrase search of its computer system to identify and produce documents which include the words significant to a long-term care policy.  Communications between personnel who handle these types of claims and their supervisors or other Bankers Life personnel are not attorney-client/work product privileged communications, but rather are communications generated in the ordinary course of defendant's business.

"The party seeking to assert a privilege has the burden of establishing its applicability." Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995) (internal citation omitted).  "The work product doctrine will not protect these documents from discovery unless they were prepared in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3) . . . ." Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987) (additional citations omitted).  "The risk management department was not involved in giving legal advice or in mapping litigation strategy in any individual case.  The aggregate reserve information in the risk management documents serves numerous business planning functions, but we cannot see how it enhances the defense of any particular lawsuit." Id.  The requested documents are neither privileged nor protected.  Request No. 12 is granted.

23

**REQUEST NO. 13:  Any and all deposition transcripts or trial testimony transcripts of any of Defendant's officers or personnel, since January 1, 2001, in any suit relating to denial or discontinuation of benefits under a policy of long term care insurance, where the denial or discontinuation is based on failure to meet benefit qualifiers.**

Defendant's response was this request was overly broad, proprietary, and subject to the attorney-client/work product privilege.  (Docket 34-7). "A trial is a public event.  What transpires in the court room is public property."  Craig v. Harney, 331 U.S. 367, 374 (1947).  "Just as the judiciary cannot 'suppress, edit, or censor events which transpire in proceedings before it,' neither does the legislature possess the Orwellian power to permanently erase from the public record those affairs that take place in open court."  Eagle v. Morgan, 88 F.3d 620, 626 (8th Cir. 1996) (citing Craig, 331 U.S. at 374).

> [A]s a general proposition, pre-trial discovery must take place in . . . public unless compelling reasons exist for denying the public access to the proceedings. . . . This presumption should operate with all the more force when litigants seek to use discovery in aid of collateral litigation on similar issues, for in addition to the abstract virtues of sunlight as a disinfectant, access in such cases materially eases the tasks of courts and litigants and speeds up what may otherwise be a lengthy process.

Jepson, Inc. v. Makita Electric Works Ltd., 30 F.3d 854, 860-61 (7th Cir. 1994) (internal citation omitted).  Testimony of defendant's officers or personnel in previous litigation is, by its very nature, public testimony in an adversarial environment to which neither the attorney-client privilege nor the attorney-work product privilege could attach.  A transcript of that testimony is not privileged.

24

Defendant has the benefit of access to the transcripts of the depositions of its officers or other personnel who have testified in cases relating to claims of denial or discontinuation of benefits under long-term care insurance policies.  The information would certainly be available to defendant to assist in preparing its witnesses and defense to this plaintiff's claims.  The information is readily available to defendant and is very difficult, if not impossible, for plaintiff to obtain.  The piecemeal process of obtaining this information by plaintiff would be extremely costly and contrary to the cause of providing a "just, speedy, and inexpensive determination of every action . . . ."  Fed. R. Civ. P. 1.

The court agrees that any prior testimony by defendant's employees on denial of long-term care benefits may be relevant to this action.  The uses of this prior testimony may include, among other uses:

1.  Revealing similar events of claim processing by this defendant.

2.  Discovery of prior adverse rulings against this defendant on the same issues being disputed in this case.

3.  Revealing prior declarations by defendant's personnel regarding the interpretation of claims manuals, other claims protocol, bonus or award programs, or claims quality assurance.

4.  Revealing internal procedures for other relevant conduct in handling long-term care policies.

5.  Cross-examination of defendant's employees disclosed as witnesses in this action.

25

The cost to defendant of producing these documents is minor in comparison to the burden placed on plaintiff if she is required to gather this material on a piecemeal basis.  It is far more efficient to require defendant to disclose what is already in its possession or under its control and allow plaintiff access to this material.  Request No. 13 is granted.

**REQUEST NO. 14:  Any documents relating to litigation against Defendant involving denial or discontinuation of benefits under policies of long term care insurance, from January 1, 2001 to present, where the denial or discontinuation is based on failure to meet benefit qualifiers.**

Defendant's response was this request was overly broad, proprietary, and subject to the attorney-client/work product privilege.  (Docket 34-7).  The same declaration of Craig, 331 U.S. at 374, applies to all litigation documents filed with any court.  Plaintiff's request seeks discovery of other cases filed against defendant related to litigation of long-term care policies.

Material from other litigation "is relevant to the defendants' intentions as to . . . coverage, as it will shed light on how the defendants have approached other [coverage] issues and used exclusionary clauses."  Owens-Corning Fiberglass Corp. v. Allstate Ins. Co., 660 N.E.2d 767, 767 (Ohio Com. Pl. 1993).  Judges of this district court have in numerous cases overruled objections to similar requests and required discovery of documents from other litigation.  "Lawful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff."  McElgunn, CIV. 06-5061 (Docket 204, p. 11) (D.S.D. 2008) (citing State Farm Mutual

26

Automobile Ins. Co. v. Campbell, 538 U.S. 408, 422 (2003)).  "Further,
'conduct that risks harm to many is likely more reprehensible than conduct
that risks harm to only a few.  And a jury consequently may take this fact
into account in determining reprehensibility.' " Id. (citing Phillis Morris USA
v. Williams, 549 U.S. 346, 357 (2007).  "A jury must be instructed,
furthermore, that it may not use evidence of out-of-state conduct to punish
a defendant for action that was lawful in the jurisdiction where it occurred."
State Farm, 538 U.S. at 422 (internal citation omitted).  In an earlier case,
Magistrate Judge Marshall P. Young granted a plaintiff's motion to compel
defendants to produce "all past litigation . . . arising out of credit disability
policies for breach of contract or bad faith, and to produce transcripts."
McElgunn, CIV. 06-5061 (Docket 84, #15) (D.S.D. 2007).

See Beyer, 266 F.R.D. at 338 ("Medico is . . . ordered to produce all
documents . . . .  Production is to include litigation documents, including but
not limited to complaints, motions, court orders, and the like."); Brown
Bear, 266 F.R.D. at 326 ("Because the documents Brown Bear requests
[prior litigation documents] may reveal that Cuna's alleged conduct in this
case occurs frequently and as a result risks harm to many, the requested
documents may be relevant to demonstrate reprehensibility, which is a
proper consideration in a punitive damages determination.").  See also BMW
of North America v. Gore, 517 U.S. 559 (1996) ("repeated misconduct is
more reprehensible than an individual instance of malfeasance. . . . ").

27

To require each plaintiff to go through an identical and expensive discovery process, while defendant has knowledge of other cases in litigation brought against it on similar types of claims, places defendant at an unusually significant advantage over this individual plaintiff litigant. Plaintiff represented to the court that the defendant "will have a computerized coding system where claim denials are assigned a specific code, so that Bankers can identify and track how many claims were denied for failure to meet benefit qualifiers.  That system allows Bankers to easily identify the information sought here." (Docket 34, p. 18).  In its memorandum in resistence to the motion to compel (Docket 35), defendant did not deny it had a computerized system which made internal discovery of this particular information easily accessible.

Plaintiff's request is properly limited in time, not unduly burdensome to defendant, and is likely to disclose information which is relevant and may be admissible.  Documents filed in other litigation, unless otherwise subject to a protective order under Rule 26(c), are not protected by either the attorney-client/work product privilege or proprietary privilege as those documents are filed as part of a court's  record.  If there is a privilege involved, defendant is required to prepare a privilege log.  Rule 26(b)(5(A)(ii). Defendant has not done so.  For these reasons, Request #14 is granted.

**REQUEST NO. 15:  Any and all court opinions or rulings that relate to the Definitions of Cognitive Impairment, Functional Incapacity, Medical Necessity, or Chronically Ill provisions in Defendant's policies of long term care insurance.**

Defendant's response was this request was overly broad, proprietary, subject to the attorney-client/work product privilege and sought public documents.  (Docket 34-7).  Defendant further objected as this request, as well as a number of other requests, is not limited to South Dakota.  (Docket 35, p. 6).  Plaintiff counters that court opinions in previous litigation will show the defendant may have misapplied its long-term care policy in this instance.  (Docket 34, p. 19).

A request of this nature was authorized by the district court in McElgunn, CIV. 06-5061, 2008 WL 2717872 at *6 (D.S.D. July 10, 2008) ("The court finds that the defendants must produce any court rulings that are now used or have been used in the past to assist defendants' employees in interpreting the insurance provisions . . . if such court opinions exist."). Defendant's long-term care policy is certainly sold in more states than just South Dakota.  If the language of these policies has been litigated, the decisions of other courts would be relevant to the issues before this court concerning defendant's knowledge and conduct, regardless of the jurisdiction in which the court opinion was issued.

Court opinions are not confidential, but rather are public documents. If court opinions have been issued in cases involving this particular defendant and relate to the areas covered by plaintiff's request, those court

decisions are relevant to the issues before the court.  Plaintiff's Request No. 15 is granted.

**REQUEST NO. 16:  Any and all documents relating to complaints made to state regulators involving Defendant's handling of long term care insurance coverage since January 1, 2001.**

Defendant's response was this request was overly broad, proprietary, and subject to the attorney-client/work product privilege.  (Docket 34-7).  In its response to plaintiff's motion to compel, defendant did not address this request.  (Docket 35).  Regulatory complaints have previously been allowed by the district court.  McElgunn, CIV. 06-5061 (Docket 206, p. 14) (D.S.D. 2008) ("[T]he court finds that such regulatory actions have a nexus to the harm suffered by plaintiff.  Also, as mentioned above, documents from January 1, 2000, through the present may be relevant to illustrate defendants' knowledge that there was no reasonable basis to deny [plaintiff's] claim.").  The court in Beyer, 266 F.R.D. at 339 agreed with that analysis:

> The requested documents, all of which are narrowed in scope to include documents relating only to complaints made to state regulators regarding [defendant's] handling of claims under policies of long term care insurance, dating from January 1, 2000, to the present, are relevant because they may provide evidence of [defendant's] bad faith in denying claims, one of the very issues raised by [plaintiff] in her complaint. The documents in [defendant's] possession relating to complaints made to state insurance regulators undoubtedly 'bear on' litigation over a claim of bad faith denial of benefits. (citing Oppenheimer Fund Inc. v. Sanders, 437 U.S. at 351).

Id.  Request No. 16 is granted.

30

**REQUEST NO. 17:  Any and all copies of any regulatory actions, including but not limited to suspension or revocation proceedings, Market Conduct Examinations, Cease and Desist Orders, Consent Orders, Reports of Examinations, Corrective Orders or Corrective Action Plans relating to Defendant's long term care insurance coverage, from January 1, 2001 to present.**

Defendant's response was this request was overly broad, proprietary, subject to the attorney-client privilege and sought public records.  (Docket 34-7).  Again, defendant did not provide any response to plaintiff's motion to compel.  (Docket 35).  This request is closely associated with Request No. 16, but more specifically focuses on the consequences of complaints filed against defendant with any regulatory agency.  Because the request focuses on defendant's long-term care insurance coverage, this information is, for the same reasons, relevant and discoverable.  Likewise, any regulatory action would certainly be in the possession of defendant, focus on the conduct of this particular defendant, and be part of its institutional knowledge relating to its own long-term care policies.  Request No. 17 is granted.

**REQUEST NO. 18:   Copies of any and all annual or periodic reports provided to state insurance regulators containing information pertaining to the number of long term care claims or denials associated with Defendant's long term care policies.  The request is not limited to South Dakota.**

Defendant's response was this request was overly broad, proprietary, and subject to the attorney-client/work product privilege.  (Docket 34-7). Plaintiff represents that the "National Association of Insurance Commissioners (NAIC) Long-Term Care Insurance Model Regulation

requires Bankers to annually report claim denial statistics." (Docket 34, p.

22).  Defendant's response does not dispute this assertion.  (Docket 35).

Defendant objects to this request as not limited to reports filed with South

Dakota regulators.  (Docket 35, p. 6).  South Dakota adopted this regulation

in 1996 as ARSD 20:16:21:52.[2]  Neither party has suggested any portion of

this reporting requirement is confidential or maintained by the state of

_____

[2]ARSD 20:06:21:52.  Reporting requirements for insurers. Each insurer
must comply with the following reporting requirements for long-term care
policies:

> (1)  The insurer must maintain records for each agent of that
> agent's amount of replacement sales as a percent of the agent's
> total annual sales and the amount of lapses of long-term care
> insurance policies sold by the agent as a percent of the agent's
> total annual sales;
> . . . .
> (4)  The insurer must report to the director annually by June 30
> the number of replacement policies sold as a percent of its total
> annual sales and as a percent of its total number of policies in
> force as of the preceding calendar year . . . ; and
>
> (5)  Every insurer shall report to the director annually by June 30,
> for qualified long-term care insurance contracts, the number of
> claims denied for each class of business, expressed as a percentage
> of claims denied . . . . No finding by the director of a violation of
> insurance laws may be based solely upon reported replacement
> and lapse rates.  For the purposes of this section, "policy" means
> only long-term care insurance, "claim" means a request for
> payment of benefits under an in force policy regardless of whether
> the benefit claimed is covered under the policy or any terms or
> conditions of the policy have been met, "denied" means the insurer
> refuses to pay a claim for any reason other than for claims not paid
> for failure to meet the waiting period or because of an applicable
> preexisting condition, and "report" means on a statewide basis.

South Dakota in a proprietary or confidential manner.  Similarly, this

information, for every state in which defendant is required to make this or a

similar filing, is relevant to the claims of plaintiff in this litigation.  Plaintiff

has agreed to modify and limit this request to January 1, 2000.  (Docket 37,

p. 15).  For the same reasons stated above regarding Requests No. 16 and

17, the nationwide information is relevant to the issues before this court.

Request No. 18 is granted for the time period of January 1, 2000, to the

present.

**REQUEST NO. 19:  Any and all company newsletters designed to inform employees of industry or company news or developments since January 1, 2001.**

Defendant's response was this request was overly broad.  (Docket 34-

7).  Plaintiff argues newsletters are helpful for a number of reasons.  (Docket

34, p. 23).  Defendant provides no response to plaintiff's argument.  (Docket

35).  Plaintiff's reasons include, among other things, pronouncements by

company officials of the role of claim handlers in profit generation, and the

specific terminology the company uses to communicate with its employees.

Plaintiff asserts this information would help her better understand that

terminology and refine further discovery requests.  Newsletters and other

publications of a defendant have been a subject of discovery orders in the

past in this district.  McElgunn, CIV. 06-5061 (Docket 84, #7) (D.S.D. 2007)

("Newsletters and presentations . . . . This request is granted to the extent

33

that these newsletters and presentations relate to bonuses or awards programs for employees."); <u>Brown Bear</u>, 266 F.R.D. at 324 ("Company newsletters are not protected by attorney-client privilege or the work product privilege.  [Defendant] has not, and presumably cannot, state facts . . . to show that the newsletters were a communication between attorney and client, were intended to be confidential, and made for the purposes of obtaining legal advice.").

Defendant's newsletters may reasonably lead to the development of admissible evidence and the request is properly limited in time. Furthermore, plaintiff has no objection to limiting this request to newsletters which mention long-term care.  (Docket 37, p. 17).  Request No. 19 is granted, but limited to long-term care insurance related information.

**REQUEST NO. 21:  Any and all transcripts and recordings of speeches or presentations in any form whatsoever, including power point presentation materials, overheads, slides, on the subject of long term care insurance coverage, or nursing home/assisted living facility insurance.**

Defendant's response was this request was overly broad, proprietary, and subject to the attorney-client/work product privilege.  (Docket 34-7). Defendant also objects because the request is not limited in time and is unduly burdensome.  (Docket 35, p. 6).

In support of her motion, plaintiff offered the presentation of one insurance company official on the strategies of litigation and claims handling.  (Docket 34, pp. 23-24).  Other stories of similar import exist.

> First, Prudential extensively trained its agents to make uniform sales presentations. . . . "[T]here is evidence that sales managers taught new agents how to identify and use cash values and dividends to pay for new policies, misled policyholders during sales presentations, and even encouraged veteran agents to churn." . . . "I have in my possession training tapes, slides and sales materials in which The Prudential's executives and registered representatives made what I now believe to be misleading statements of material fact about features, returns and product identification." . . . A memorandum authored by . . . Prudential's Director of Consumer Affairs and Marketing Practices, warned senior Prudential management that Prudential agents were being taught to sell insurance through churning mechanisms and that agents were rewarded for their churning with high commissions . . . .

In re Prudential Ins, Co. of America Sales Practices Litigation, 962 F. Supp. 450, 515 (D. N.J. 1997) (internal documentation citations omitted).

Whether these strategies are commonplace or isolated incidents, a plaintiff is entitled to inquire of a defendant's training or marketing strategy to determine if relevant, admissible evidence may be discovered.  See McElgunn, CIV. 06-5061 (Docket 84 #8) (D.S.D. 2007) ("Speeches and video taped presentations of company officers . . . . This motion to compel is granted, subject to the limitation that only those speeches or presentations that relate to claims matters from January 1, 2000, to date.").  Plaintiff's request is relevant and calculated to lead to admissible evidence.  Like the other requests, this should be limited to the time period of January 1, 2000, to the present.  Request No. 21 is granted, subject to this time limitation.

**REQUEST NO. 22:   Any and all advertisements or other marketing materials (including but not limited to brochures and/or video) issued by Defendant and pertaining to long term care insurance, since January 1, 2001.**

Defendant's response was this request was overly broad and proprietary.  (Docket 34-7).  Plaintiff contends that discovery of defendant's advertising materials may disclose these materials may not be consistent with defendant's representations at trial.  (Docket 34, p. 24).   Defendant's response does not address this request.  (Docket 35).

"Sales and marketing materials, by definition, are designed for general distribution to the public . . . ."  Velocity International, Inc. v. Celerity Healthcare Solutions, Inc., Civ. No. 09-102, 2010 WL 2196423 at *4 (W.D. Pa. 2010).  Marketing materials may or may not be pre-approved by the company.  "Second, Prudential's requirement that agents use pre-approved written marketing materials, which contained identical misrepresentations and omissions, further guaranteed the consistency of accompanying oral misrepresentations."  In re Prudential, 962 F. Supp at 515.  See McElgunn, CIV. 06-5061 (Docket 403, p. 4) (D.S.D. 2009) ("The jury could find that defendants' failure to abide by their own . . . advertising materials when determining whether an insured is disabled constitute[d] bad faith.").

Plaintiff's request is specifically limited to advertising of long-term care insurance, is limited in time and not unduly burdensome to defendant. Request No. 22 is granted.

36

**REQUEST NO. 23:  Copies of any reinsurance or co-insurance agreements, and all the terms and conditions thereof, between Defendant and any other entity, related to long term care coverage.**

Defendant's response was this request was overly broad and proprietary.  (Docket 34-7).  Plaintiff asserts this information is pertinent because if a reinsurance partner is involved or if a policy is unprofitable, internal discussions about these issues will occur.  (Docket 34, p. 25).  Defendant makes no response to this assertion, but objects to this request as being unlimited in time and irrelevant.  (Docket 35, p. 6).  In her reply, plaintiff has no objection to limiting this request to January 1, 2005, through the present.  (Docket 37, p. 15).  Fed. R. Civ. P. 26(a)(1)(A)(iv) specifically requires a party to disclose, without a formal request, "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."  Id.

Reinsurance is defined as:

[A] special form of insurance obtained by insurance companies to help spread the burden of indemnification.  A reinsurance company typically contracts with an insurance company to cover the specified portion of the insurance company's obligation to indemnify a policyholder in the event of a valid claim.  This excess insurance, as it is called, enables the insurance companies to write more policies than their reserves would otherwise sustain since its [sic] guarantees the ability to pay a part of all claims.  The reinsurance contract is not with the insured/policyholder.  When a valid claim is made, the insurance company pays the first level insured, and the reinsurance company pays the insurance company.  The reinsurance company's obligation is to the

37

insurance company, and the insurance company vis-a-vis the reinsurer is thus the insured, or more appropriately the "reinsured."

Excess & Casualty Reinsurance Assoc. v. Insurance Commissoner of the State of California, 656 F.2d 491, 492 (9th Cir. 1981).  Any reinsurance policy held by Bankers Life is discoverable under Rule 26(a)(1)(A)(iv).

"Insurers may well have discussed their positions . . . with some or all of their reinsurers. . . . [Plaintiffs] are entitled to find out the facts in that area."  National Union Fire Ins. Co. v. Continental Illinois Corp., et al., 116 F.R.D. 78, 83 (N.D. Ill. 1987).

> Insurers attempt to show the irrelevance of their reinsurance arrangements by discussing the various types of reinsurance and arguing that, because of the nature of their reinsurance agreements, their reinsurers did not take part in assessing the risk before issuing the Policies or in contesting coverage later. But the things Insurers do not talk about are more telling than what they do discuss.  There can be no question they communicated (pre-or post-issuance or both) with their reinsurers about the Policies.  Regardless of the legal nature of the reinsurance arrangements, those communications are relevant.  For [plaintiffs] to understand the significance of those communications, the reinsurance agreements may be needed and are thus relevant. They surely could lead to the discovery of admissible evidence-the low threshold of Rule 26(b)(1).

Id.  The relationship between Bankers Life and its reinsurers is relevant to determining if there is a pattern of conduct or an isolated incident of denial of plaintiff's long-term care insurance coverage.  Discovery of this relationship is permissible under Rule 26(a)(1)(A)(iv) and may well lead to admissible evidence under Rule 26(b)(1).

Plaintiff agreed to limit the scope of this request to January 1, 2005, to the present.  (Docket 37, p. 15).  Request No. 23 is granted for the time period of January 1, 2005, through the present.

**REQUEST NO. 27:  Any documents related to other residents of South Dakota who have been sent letters denying benefits or discontinuing benefits for long term care insurance since January 1, 2001.  This shall include policyholders whose claims were denied but later accepted, or whose claims were accepted but benefits later discontinued, or whose claims were denied and that action never changed.**

Defendant's response was this request was overly broad, proprietary, and sought information relating to other policyholders.  (Docket 34-7).  Plaintiff represents that because ARSD 20:06:21:52 requires the defendant to report the number of denied claims to the South Dakota Division of Insurance, the defendant should likewise be required to disclose to plaintiff the information relating to denial of claims of other South Dakota policyholders.  (Docket 34, p. 26).  Other than its boilerplate objections, defendant did not address this request in its response.  (Docket 35).

In Beyer, the court ruled the defendant must produce all documents associated with denial of long-term care insurance for other residents in South Dakota since 2002.  "The request is limited to South Dakota residents who have been sent letters denying or terminating coverage for long term care insurance since January 1, 2002.  Accordingly, the court orders Medico to produce documents in response to Ms. Beyer's request

39

. . . . " Beyer, 266 F.R.D. at 339.  A similar result was reached earlier in this district in McElgunn, CIV. 06-5061 (Docket 204, pp. 3-5) (D.S.D. 2007).

For the same reasons articulated in Request No. 14, this information is relevant to the issues before the court.  Request No. 27 is granted. However, all personal identifiers associated with this documentation must be protected and redacted before defendant complies with the request.  Fed. R. Civ. P. 5.2 and D.S.D. Civ. LR 5.2.

**ATTORNEY'S FEES**

Fed. R. Civ. P. 37(a)(5)(A) specifically authorizes and, in fact, requires the court to award attorney's fees and expenses to plaintiffs for litigating and prevailing on a motion to compel discovery.  But for plaintiff's motion to compel, Bankers Life will not change its stance on discovery.  Plaintiff prevailed on her motion to compel.  Plaintiff is entitled to an award of her attorney's fees and expenses, together with the statutory South Dakota 6 percent sales tax on fees, against the defendant for the time and expense of bringing the motion to compel before the court.

**ORDER**

Based upon the foregoing, it is hereby

ORDERED that plaintiff's motion to compel (Docket 33) is granted.

IT IS FURTHER ORDERED that within ten (10) days of this order defendant shall serve on plaintiff its second supplemental set of initial

40

disclosures in compliance with Fed. R. Civ. P. 26(a)(1), providing the name and, if known, the address and telephone number of each individual likely to have discoverable information, together with the subject(s) of that information the defendant may use to support its defenses (unless the use would be solely for impeachment purposes).

IT IS FURTHER ORDERED that as part of that second supplemental set of initial disclosures in compliance with Fed. R. Civ. P. 26(a)(1), defendant shall provide to plaintiff a copy of all documents, electronically stored information, and tangible things which defendant has in its possession, custody, or control and which it may use to support its defenses (unless the use would be solely for impeachment purposes).

IT IS FURTHER ORDERED that within forty-five (45) days of this order defendant shall produce documents in compliance with the Federal Rules of Civil Procedure in response to the following:

    A.   Requests Nos. 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 20, 22, 24, 25 and 26;

    B.   Request No. 2, subject to the requirement that no personal identifying information of Bankers Life's employees shall be disclosed outside of this litigation without prior approval of this court.

    C.   Request No. 18 is granted for the time period of January 1, 2000, to the present.

    D.   Request No. 19 is granted, but limited to long-term care insurance related information.

41

E.  Request No. 21 is granted for the time period of January 1, 2000, to the present.

F.  Request No. 23 is granted for the time period of January 1, 2005, to the present.

G.  Request No. 27 is granted, subject to the requirement that all personal identifiers associated with this documentation must be redacted in compliance with Rule 5.2 and D.S.D. Civ. LR 5.2 before defendant complies with this request.

IT IS FURTHER ORDERED, pursuant to Rules 37(a)(5)(A) and 37(d)(3), that plaintiff is entitled to reasonable attorney's fees and expenses for bringing the motion to compel before the court.  Plaintiff shall file an affidavit within fourteen (14) days of this order setting forth the time spent in connection with litigating the motion and the hourly rate requested for attorney's fees.

Dated January 14, 2011.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

42